IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01492-RBJ-CBS

FRANCES PERSON,
    Plaintiff,
v.

MICHAEL ASTRUE, Commissioner of Social Security,
    Defendant.

---

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

This civil action comes before the court pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-433, for review of the Commissioner of Social Security's final decision denying Plaintiff, Ms. Person's, application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g). Pursuant to the Order of Reference dated May 3, 2012 and the memorandum dated May 4, 2012, this civil action was referred to the Magistrate Judge to prepare a Recommendation "regarding the Plaintiff's appeal of the Social Security Administration's final determination." (*See* Docs. # 17, # 18). The court has reviewed the Complaint, Defendant's Answer, Plaintiff's Opening Brief, Defendant's Response Brief, Plaintiff's Reply Brief, the entire case file, the administrative record, and the applicable law and is sufficiently advised in the premises.

I.    Procedural Background

On October 6, 2006, Ms. Person filed applications for DIB under Title II and for SSI

payments under Title XVI of the Act, 42 U.S.C. §§ 1381-1383. (*See* Record (Doc. # 7-5) at 140-53). Ms. Person alleged that she became disabled on January 1, 2002 due to fibromyalgia/chronic fatigue, depression, anxiety, mood disorder, chronic allergies, back, neck, and leg pain, irritable bowel syndrome (IBS), unpredictable mental and physical fatigue, and difficulty focusing and concentrating. (*See* Record (Doc. # 7-2) at 17, 190; (Doc. # 7-6) at 236). She later amended the date she became disabled to May 16, 2005. (*See* Record (Doc. # 7-2) at 17, 41, 78). The Colorado Disability Determination Services ("DDS") denied Ms. Person's claim at the initial determination stage and she requested a hearing. (*See* Record (Doc. # 7-3) at 93-94; Doc. # 7-4 at 106). Administrative Law Judge Nicholas J. LoBurgio ("ALJ") held two hearings, on December 16, 2008 and February 24, 2009. (*See* Record (Doc. # 7-2) at 34-92). Ms. Person was represented by counsel and testified at the hearings. Ms. Pat Pauliney attended both hearings and testified as a vocational expert ("VE"). (*See* Record (Doc. # 7-2) at 59-64, 88-91). Dr. Robert Pelc, M.D., testified as a medical expert at the supplemental hearing. (*See id.* at 41-56). The ALJ issued his written decision on March 20, 2009, concluding that Ms. Person was not disabled under the Act because she could perform her past relevant work. (*See* Record (Doc. # 7-2) at 15-33). After considering additional exhibits that were not before the ALJ, the Appeals Council denied Ms. Person's request for review on April 13, 2011. (*See* Record (Doc. # 7-2) at 1-13). The decision of the ALJ then became the final decision of the Commissioner. 20 C.F.R. § 404.981; *Neilson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Ms. Person filed this action on June 7, 2011.

II.     Standard of Review

In reviewing the Commissioner's final decision, the court must "closely examine the record as a whole to determine whether the . . . decision is supported by substantial evidence and adheres to applicable legal standards." *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (internal quotation marks and citation omitted). *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (court "must determine whether the . . . decision of nondisability, reached through action of the Appeals Council, is supported by substantial evidence, *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotation marks and citation omitted). *See Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) ("Substantial evidence is more than a scintilla, but less than a preponderance; . . .") (citation omitted). The court "may neither reweigh the evidence nor substitute [its] judgment for the [Commissioner's]." *White v. Massanari*, 271 F.3d 1256, 1260 (10th Cir. 2001). The court "must affirm . . . if the decision is supported by substantial evidence." *Eggleston v. Bowen*, 851 F.2d 1244, 1246 (10th Cir. 1988) (citing 42 U.S.C. § 405(g)).

III.    Analysis

An individual is eligible for DIB benefits under the Act if she is insured for DIB, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). An individual's eligibility for SSI payments shall be determined on the basis of the individual's income, resources, and other relevant characteristics. 42 U.S.C. § 1382(c)(1). In addition to being financially eligible, the individual must file an application for SSI and be under a "disability" as defined in the Act. 42 U.S.C. § 1382. An individual "shall be determined to be under a disability only if [her] physical or

3

mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. *See Williams*, 844 F.2d at 750-52 (describing the five steps in detail). "If a determination can be made at any of the steps that a claimant is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750. "The claimant bears the burden of proof through step four of the analysis." *Neilson*, 992 F.2d at 1120. At step four of the evaluation process, a claimant has the burden of showing he or she cannot return to his or her past relevant work, that is, his or her specific job or that type of work in general. 20 C.F.R. § 404.1520; *Neilson*, 992 F.2d at 1120; *Jozefowicz v. Heckler*, 811 F.2d 1352, 1356 (10th Cir. 1987) (citations omitted).

At step five, the burden shifts to the Commissioner to show that a claimant can perform work that exists in the national economy, taking into account his or her residual functional capacity (RFC), age, education, and work experience. *Neilson*, 992 F.2d at 1120.

> . . . A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability. The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform. In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy. To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work). . . .
> . . .
> If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. However, . . . [t]he decision maker must

>then consider all relevant facts to determine whether the claimant's work capability is further diminished in terms of jobs contraindicated by nonexertional limitations.
>   . . .
>   Nonexertional limitations may include or stem from sensory impairments; epilepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain. . . .

*Williams*, 844 F.2d at 751-52.

Following the five-step evaluation process, the ALJ determined that Ms. Person: (1) had not engaged in substantial gainful activity since the alleged onset date of disability on May 16, 2005; (2) had severe impairments of fibromyalgia, affective disorder, anxiety disorder, and alcohol abuse; (3) did not have an impairment or combination of impairments listed in or medically equal to one listed in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, 416.926); (4) has the RFC to perform her past relevant work as a file clerk; and (5) is capable of performing work activities that are not precluded by her RFC. (*See* Record (Doc. # 7-2) at 14-33).

Ms. Person challenges steps three and four of the ALJ's sequential evaluation. More specifically, Ms. Person claims that the Commissioner erred in: (1) finding that she has the mental residual functional capacity ("RFC") to perform past relevant work; (2) finding that her subjective evidence of her symptoms was not fully credible; and (3) failing to attribute adequate weight to her treating sources' opinions. (*See* Doc. # 1 at 2-3 of 4). The Commissioner responds that substantial evidence supports the decision that Ms. Person is not disabled under the Act.

A.      Plaintiff's Challenge to ALJ's Determination at Step Three

At step three, the ALJ found that Ms. Person did not demonstrate that she has an impairment that meets or equals a listed impairment, for a presumptive finding of disability. (*See* Record (Doc. # 7-2) at 20-32;  20 C.F.R. § 404.1520(d)).  The ALJ determined that Ms. Person's impairments considered singly or in combination did not meet or equal listings 12.04, 12.06, or 12.09, because, among other things, she had only mild to moderate restriction in activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace.  (*See* Record (Doc. # 7-2) at 20-21).  Citing *Carbajal v. Astrue*, No. 10-cv-02025-PAB, 2011 WL 2600984, at * 2-3 (D. Colo. June 29, 2011),  Ms. Person argues that the ALJ erred in finding her impairments do not equal a listed impairment because a single decision maker ("SDM"), Jesse Milner, signed the Disability Determination and Transmittal form 831.  (*See* Doc. # 7-3 at 93-94).

The question whether a claimant meets or equals a listed impairment is strictly a medical determination. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990) (citations omitted).  "[L]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." Social Security Ruling 96-6P ("SSR 96-6P"), 1996 WL 374180 (July 2, 1996).  *See also Carbajal*, 2011 WL 2600984, at *2 (internal quotation marks and citation omitted).   "The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) . . . ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and

6

reconsideration levels of administrative review." SSR 96-6P. In *Carbajal*, the record did not contain any other physician's opinion on the issue of equivalence. 2011 WL 2600985, at *3. Here, the ALJ recognized the need for medical expert testimony to evaluate whether Ms. Person's impairment met or equaled a listed impairment. (*See* Record (Doc. # 7-2) at 73-77). Consistent with the agency's policy, the ALJ received a state agency doctor's opinion on the issue of medical equivalence into the record when Dr. Pelc testified as a medical expert at the supplemental hearing "to address the mental health issues in this case." (*See* Record (Doc. # 7-2) at 36, 41-56). Dr. Pelc's testimony, in addition to a referral examination by Dr. David Benson, Ph.D., and two consultative examinations by Dr. Mac Bradley, Ph.D, and Dr. Risa Ravitz, M.D., provided sufficient evidence for the ALJ's step three determination that Ms. Person's impairments did not meet or equal a listed impairment. (See Record (Doc. # 7-7) at 267-78, 319-23, 324-30; *see also* 20 C.F.R. § 404.1526 (setting forth method for determining equivalence)). Ms. Person's own testimony regarding her daily activities and abilities also supports the ALJ's finding. (*See* Record (Doc. # 7-2) at 56-59, 78-88). The court finds no error in the ALJ's determination that Ms. Person did not carry her burden of showing that her impairment meets or equals a listed impairment.

B.   Plaintiff's Challenge to ALJ's Determination at Step Four

At step four, Ms. Person has the burden of showing she cannot return to her past relevant work or that type of work in general. Before the ALJ assessed whether Ms. Person could perform her past relevant work, he had to determine her RFC "based on all the relevant medical and other evidence" in the case record. 20 C.F.R. § 404.1520(a)(iv),(e). RFC determinations are for the ALJ to make "based on the entire case record, including the

objective medical findings and the credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009). *See also Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990) (when determining claimant's credibility and assessing his residual functional capacity, the ALJ properly considered "all" of the evidence, both medical and nonmedical, as he was required to do);  20 C.F.R. § 404.1546 (ALJ is responsible for assessing residual functional capacity).

At step four, the ALJ found that Ms. Person has the RFC to: occasionally lift 20 pounds and frequently lift 10 pounds; sit, stand or walk for two hours at a time and six hours per day; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; frequently balance; understand, remember, and carry out work instructions and policies that can be learned within 90 days; and occasionally interact with coworkers, supervisors, and the public. (*See* Record (Doc. # 7-2) at 21,).  The ALJ found that Ms. Person should not climb ladders or scaffolding, work with open dangerous moving machinery, at unprotected heights, or where driving is a requirement of the job, and should avoid concentrated exposure to extreme cold.  (*See id.*). Ms. Person argues that the ALJ erred in evaluating her mental RFC, her credibility, and her treating sources' opinions.  (*See* Doc. # 13 at 5, 17-32 of 42).

1.  Ms. Person's Testimony

Ms. Person was 48 years old on the amended date of the alleged onset of disability. She was 52 years old at the time of the first hearing before the ALJ. (*See* Record (Doc. # 7-2) at 78).  She has a high school degree and training as a medical receptionist. (*See id.* at 78, Doc. # 7-6 at 199).  Ms. Person last worked in April 2008, doing freelance typing about 10 hours a month for Update International. (*See* Record (Doc. # 7-2) at 80).  She also worked

temporary jobs from several weeks to fifteen months in duration as a law library clerk for a small business, a case assistant and file clerk at a downtown Denver law firm, and doing data entry and scanning. (*See* Doc. # 7-2 at 81-86; Doc. # 7-6 at 202-09). She worked up to six hours per shift five days per week. (*See id.* at 84). She "felt like the quality of my work was, was very, very good," but she "didn't feel very respected for the work that I was doing." (*See* Doc. # 7-2 at 57-58). Ms. Person testified that she experienced stress and reacted inappropriately when a supervisor criticized the way she "was doing a particular task." (*See* Record (Doc. # 7-2) at 57). She lost two jobs because of difficulty responding appropriately to criticism or disappointment. (*See id.* at 57-58). She had difficulty when she was expected to work at 9:00 a.m. instead of 10:00 a.m., or a flexible schedule. (*See id.* at 57, 59, 86).

   2.   Medical Evidence

Ms. Person attended individual psychotherapy with therapist Debi Circle, M.A., on a weekly or bi-weekly basis from December 2005 until November 2008. (*See* Record (Doc. # 7-2) at 38, (Doc. # 7-8) at 353-500, 509-42 (treatment session notes), 543-45 (Circle C.V.)). In May 2008, Ms. Circle completed a Medical Impairment Questionnaire, in which she ranked Ms. Person as having "mild" limitations in her abilities to understand, remember, and carry out simple instructions; "moderate" limitations in her abilities to make judgments on simple work-related decisions, understand and remember complex instructions, and interact appropriately with the public, supervisors, or co-workers; and "marked" limitations in her abilities to carry out complex instructions, make judgments on complex work-related decisions, and respond appropriately to work situations and changes in a routine work setting. (*See* Record (Doc. # 7-8) at 501-08).

Dr. Benson performed a psychological evaluation of Ms. Person on May 16, 2005 on a referral to assess the "current level of intellectual and psychological functioning in order to further evaluate the client's abilities and needs for vocational rehabilitation." (*See* Record (Doc. # 7-7) 267-78). Dr. Benson diagnosed Ms. Person with mood disorder NOS ("not otherwise specified"), generalized anxiety disorder, and alcohol dependence in remission. (*See id.* at 276). Dr. Benson rated Ms. Person with average to above-average intellectual abilities and suggested that she had been previously underemployed. (*See* Record (Doc. # 7-7) at 271, 275, 277). He noted her strong "visual perceptual skills." (*See id.* at 275). Dr. Benson acknowledged that Ms. Person "will tend to be short-sighted in her interest and goals and will lose interest in jobs." (*See* Record (Doc. # 7-7) at 277). He opined that "the general qualities which will create the best chance for her to hold a job" are "that the job is comfortable for her and has flexibility in scheduling and is not stressful." (*See* Record (Doc. # 7-7) at 278). Dr. Benson concluded that Mr. Person "has the capability intellectually of competing in a variety of areas." (*See* Record (Doc. # 7-7) at 277). Denver Health outpatient treatment notes from March 2005 to September 2008 indicate that Ms. Person was seen for eczema/dermatitis, alcoholic relapse, vaccination, dry eyes, abdominal pain, a PAP test, a mammogram, a virus, a colonoscopy, an endoscopy, and that her fibromyalgia was "fairly stable" or nonsymptomatic. (*See* Record (Doc. # 7-7) at 279-316, 345-47, 350-52). Ms. Person was also treated approximately once per month by a chiropractor between 2004 and 2008 for shoulder, neck, and upper back pain. (*See* Record (Doc. # 7-7) at 333-42). A letter from Ms. Tracey Lister, a physician assistant at Focus on Fibromyalgia, indicates that Ms. Person was in her care in 2004. (*See* Record (Doc. # 7-7) at 266). There are no records regarding Ms. Lister's treatment of Ms. Person and Ms. Lister's license to practice was

10

subsequently suspended. (*See* Record (Doc. # 7-2) at 26, 37-38).

Dr. Bradley performed a psychiatric consultative examination of Ms. Person for the DDS on May 31, 2007. (*See* Record (Doc. # 7-7) at 319-23). Dr. Bradley documented that Ms. Person's daily activities included caring for herself, her cat, and her apartment. She ran errands, went to appointments, attended AA meetings, and used the internet to communicate with others. (*See* Record (Doc. # 7-7) at 320). Dr. Bradley concluded that Ms. Person appeared to have "the ability to complete all normal activities of daily living in a timely, minimally functional manner." (*See id.*). The "intellectual screening portion of the mental status examination" demonstrated to Dr. Bradley that Ms. Person had adequate long-term and short-term memory, intact "[a]bstract verbal-associational thinking," adequate vocabulary and math skills, and adequate comprehension, judgment and insight. (*See* Record (Doc. # 7-7) at 322). Dr. Bradley diagnosed Ms. Person with Dysthymic Disorder, Generalized Anxiety Disorder, and Alcohol Abuse of Dependence. (*See id.*). Dr. Bradley opined that while Ms. Person had diagnosable mental health conditions, she was "able to function above a minimally adequate level" and that these conditions did not cause any marked or extreme impairment in understanding and memory, sustained concentration and persistence, social interaction, or adaption. (*See id.* at 323).

Also on May 31, 2007, Dr. Risa Ravitz, M.D., performed a consultative examination of Ms. Person for DDS. (*See* Record (Doc. # 7-7) at 324-30). Ms. Person reported to Dr. Ravitz that her fibromyalgia remained "about the same." (*See id.* at 324). Dr. Ravitz concluded that the physical examination was unremarkable and did not recommend any restrictions on Ms. Person's activities. (*See id.* at 328). Dr. Ravitz' "opinion suggests much greater capacity to perform work activities than was described by the claimant and diminishes [the]

11

persuasiveness of" other testimony and opinions. (*See* Doc. # 7-2 at 26).

Dr. Pelc testified at the February 24, 2009 hearing that Ms. Person's impairments did not meet or equaled a listed impairment. (*See* Record (Doc. # 7-2) at 43-56). Dr. Pelc rated Ms. Person as having mild to moderate restrictions in her activities of daily living, social functioning, and concentration, persistence and pace. (*See* Doc. # 7-2 at 45-51). Dr. Pelc relied on the evaluations by Dr. Benson and Dr. Bradley, Ms. Circle's clinical notes, and the overall record. (*See* Doc. # 7-2 at 46). In Dr. Pelc's opinion, Ms. Person's abilities and activities were consistent with only mild to moderate limitations. (*See* Doc. # 7-2 at 47-50). In Dr. Pelc's opinion, Ms. Circle's rating of Ms. Person with moderate to marked restrictions was not supported by the record. (*See* Doc. # 7-2 at 51-52). Dr. Pelc opined that Ms. Circle's and Dr. Bradley's overall assessments of Ms. Person were consistent with moderate to mild level limitations that would not prevent Ms. Person from working on a regular basis. (*See* Doc. # 7-2 at 54).

      3.    Vocational Expert Testimony

Ms. Pat Pauliney attended both hearings and testified as a vocational expert ("VE"). (*See* Record (Doc. # 7-2) at 59-64, 88-91). Ms. Pauliney categorized the occupationally significant characteristics of Ms. Person's past work as semiskilled to skilled and sedentary to light. (*See* Doc. # 7-2 at 89-90; Dictionary of Occupational Titles ("DOT") 203.582-054; 206.367-014; 249.367-046; 259.587-018). The ALJ asked Ms. Pauliney to assume a hypothetical individual the same age and with the same education and work experience as Ms. Person, who could: occasionally lift 20 pounds, frequently lift 10 pounds, sit, stand or walk for two hours at a time, six hours total, occasionally climb ramps and stairs, stoop, kneel,

crouch, and crawl, frequently balance, understand, remember, and carry out work instructions and policies that can be learned within 90 days, occasionally interact with coworkers, supervisors, and the public, should avoid concentrated exposure to extreme cold, and should not climb ladders or scaffolding. (*See* Record (Doc. # 7-2) at 61). When asked by the ALJ whether such hypothetical individual could perform Ms. Person's past work, Ms. Pauliney testified that such individual could perform the duties required as a file clerk. (*See id.* at 61-62). Ms. Pauliney testified that if the sitting requirement were amended to sitting approximately six hours a day, such individual could work as a document preparer. (*See id.* at 62). Based on the findings of the VE, the ALJ found that Ms. Person's past relevant work as a file clerk and document preparer do not require activities beyond her RFC, that she did not satisfy her burden of establishing that she is unable to perform her past relevant work either as she described it or as it is generally performed in the national economy, and thus, she is not under a disability defined in the Act. (*See* Record (Doc. # 7-2) at 32-33).

    4.    ALJ's Determination of Credibility

In evaluating all the evidence, the decision maker may make a determination of a plaintiff's credibility. *Williams*, 844 F.2d at 753. The ALJ found that Ms. Person's evidence regarding the intensity, persistence and limiting effects of her symptoms was not fully credible, primarily because it was not consistent with the medical record. (*See* Record (Doc. # 7-2) at 24). Great deference is given to an ALJ's determination of the claimant's credibility. *Fowler v. Bowen*, 876 F.2d 1451, 1455 (10th Cir. 1989) (citations omitted). "Based on a consideration of all of the evidence in the case record, the adjudicator may find all, only some, or none of an individual's allegations to be credible." *Brown v. Callahan*, 120 F.3d 1133, 1135-36 (10th

Cir. 1997) (quoting SSR 96-7P, 1996 WL 374186 (July 2, 1996)). *See also* 20 C.F.R. § 404.1529. In reviewing the ALJ's determinations, the court may not reweigh the evidence or substitute its own discretion for that of the ALJ. *White*, 271 F.3d at 1260.

The record reflects that Ms. Person has impairments that are demonstrated by objective medical evidence and that the impairments "could reasonably be expected to cause the types of alleged symptoms." (*See* Record (Doc. # 7-2) at 24). However, the evidence as a whole, including medical and nonmedical, is inconsistent with Ms. Person's subjective complaints of her symptoms and limitations. Ms. Person's allegations of symptoms and limitations abilities are inconsistent with her work history, her abilities, and her daily activities, as described in her own testimony and as assessed by medical professionals. The evidence does not demonstrate that Ms. Person's condition has worsened since she was working. Ms. Person's alleged symptoms were intermittent and improved when she refrained from drinking alcohol. (*See* Record (Doc. # 7-2) at 25, 27, 30-31). It is clear to the court that the ALJ carefully examined the administrative record and the medical evidence. His written decision contains a thorough analysis and discussion of Ms. Person's physical and mental conditions and the treatment provided by numerous providers. The ALJ's credibility determination is entitled to deference and grounded in the evidence.

5. Opinion Evidence of Treating Sources

Ms. Person argues that the ALJ did not attribute adequate weight to the opinions of consulting examiner Dr. Benson and treating therapist Ms. Circle in determining that she was able to work on a regular basis.

The ALJ considered and gave Dr. Benson's opinion "some weight," citing 20 C.F.R. §§

404.1527, 416.927.  (*See* Record (Doc. # 7-2) at 28).  The ALJ noted Dr. Benson's opinion regarding the effect that stress may have on Ms. Person.  (*See id.* (noting Dr. Benson's report regarding "sensitivity on the claimant's part to decompensate under stress")).  However, the ALJ noted that Dr. Benson's opinion was not supported by any episodes of decompensation in the record or by the opinions of Dr. Bradley or Dr. Pelc.  (*See* Doc. # 7-2 at 28-30).  Addressing the issue of work schedule flexibility, the ALJ found that even Dr. Benson's opinion did not support the amount of flexibility that Ms. Person alleged she required.  (*See* Doc. # 7-2 at 28 ("the undersigned does not see that kind of requirement in Dr. Benson's opinion nor is it supported elsewhere in the record or by the opinions of Dr. Bradley or the medical expert.")).  Ms. Person appears to be asking the court to reweigh the evidence and come to a different conclusion than the ALJ, which the court "cannot do."  *Mounts v. Astrue*, No. 11-1172, 2012 WL 1609056, at * 8 (May 9, 2012) (citation omitted).  The court finds no error in the ALJ's assignment of "some weight" to Dr. Benson's opinion.

The ALJ afforded Ms. Circle's opinions "no significant weight."  (*See* Doc. # 7-2 at 28).  The ALJ noted that, with a Masters degree in counseling, Ms. Circle was an "other source," rather than an "acceptable medical source."  (*See* Doc. # 7-2 at 28;  20 C.F.R. §§ 404.1513, 416.913; SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006)).  Ms. Circle opined on Ms. Person's physical condition, an area beyond her expertise.  (*See* Doc. # 7-8 at 504).  The ALJ found Ms. Circle's opinion unsupported by her own records.  Ms. Circle assigned Ms. Person a current Global Assessment of Functioning (GAF) score of 55 and a score of 61 as the highest GAF for the past year.  (*See* Doc. # 7-8 at 501).[1]  The GAF scores of 55 and 61 that Ms.

---

[1]     GAF is a numeric scale of 0 through 100 used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults.  The scale is presented and described in the American Psychiatric Ass'n,

Circle assigned indicate that Ms. Person experienced between moderate and mild symptoms or difficulties. (*See* DSM-IV-TR at 34). However, these GAF scores were inconsistent with the moderate to marked restrictions rated by Ms. Circle. (*See* Doc. # 7-8 at 504, Doc. # 7-2 at 27-28). The ALJ also correctly found that Ms. Circle's opinion was inconsistent with other medical evidence and medical expert testimony in the record. (*See* Doc. # 7-8 at 504, Doc. # 7-2 at 30-31). *See also* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). The record and applicable regulations support the ALJ's decision to give Ms. Circle's opinion no significant weight. *See Marshall v. Astrue*, 315 F. App'x 757, 761-62 (10th Cir. 2009) (ALJ gave a sufficient reason – inconsistent medical evidence – for rejecting treating physician's opinion).

6. ALJ's RFC Determination

RFC is the most an individual can do despite impairment related limitations that are supported by the record. *See* 20 C.F.R. § 404.1545(a). A finding that a claimant can return to her past relevant work requires a finding that she can perform the "physical and mental demands" of such work. *See* 20 C.F.R. § 404.1520(f). Ms. Person argues that the ALJ failed to consider the combination of her mental and physical limitations or the mental demands of her past relevant work. (*See* Doc. # 13 at 17-32).

The ALJ considered the entire record in determining that Ms. Person had the ability to

---

Diagnostic & Statistical Manual of Mental Disorders (4th ed. Text Revision 2000) ("DSM-IV-TR") on page 34. The score is often given as a range, such as 61 - 70 ("Some mild symptoms (e.g., depressed mood and mild insomnia . . ."), 51 - 60 ("Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks . . .").

understand, remember, and carry out work instructions and policies that can be learned within 90 days and to occasionally interact with co-workers, supervisors, and the public. (*See* Doc. # 7-2 at 21). Dr. Bradley concluded that while Ms. Person had diagnosable mental health conditions, she had adequate long-term and short-term memory, intact "[a]bstract verbal-associational thinking," adequate vocabulary and math skills, adequate comprehension, judgment and insight, was "able to function above a minimally adequate level," and that these conditions did not "cause marked or extreme impairment . . . in understanding and memory, sustained concentration and persistence, social interaction, or adaptation." (*See* Doc. # 7-7 at 322-23).

The ALJ specifically considered and discounted Ms. Person's assertion that she "decompensated" under stress and that she needed a flexible work schedule and non-stressful work. The ALJ legitimately discounted these alleged limitations because they were not supported by the medical evidence in the record or the expert medical testimony. Dr. Benson did not recommend the flexibility that Ms. Person alleged she requires. Nor did the opinions of Dr. Bradley or Dr. Pelc support such limitations. (*See* Doc. # 7-2 at 28, 44-49). Dr. Pelc did not "find any episodes of decompensation" and did not consider Ms. Person's alcoholic relapses to be "decompensation episodes." (*See* Doc. # 7-2 at 46, 49). Rather, Dr. Pelc considered Ms. Person's relapses reflective of "chronic, intermittent alcohol use." (*See id.*). The record as a whole does not support Ms. Person's contention that she decompensates under stress or that any employment must permit a flexible schedule as determined by her. The VE described Ms. Person's past work of file clerk as semiskilled, light work, primarily sedentary. (*See* Doc. # 7-2 at 90). The ALJ included the mental limitations supported by the record in his hypothetical question to the VE. (*See* Doc. # 7-2 at 61 ("the

ability to understand, remember, and carry out those kinds of work instructions and policies that can be learned in a period of up to approximately 90 days, where there's only occasional work interaction with co-workers, the public, or supervisors")). The VE testified that an individual with these limitations could perform Ms. Person's past work as a file clerk both as she performed the job and as the job was customarily performed.  (*See id.* at 61-62).  The record also indicates that Ms. Person has suffered from her mental impairment of alcohol abuse since she was 15 years old and yet was able to maintain her past employment.  (*See, e.g.*, Doc. # 7-6 at 229, Doc. # 7-7 at 268, 321, 371).  The ALJ's RFC determination was supported by substantial evidence, as was his determination that Ms. Person retained the ability to perform her past relevant work as a file clerk.

IV.     Conclusion

The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Ms. Person was not disabled within the meaning of Titles II or XVI of the Social Security Act and therefore not eligible to receive disability insurance benefits. Accordingly, IT IS RECOMMENDED that the Commissioner's final decision be AFFIRMED and this civil action be DISMISSED, with each party to bear her or his own fees and costs.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 21st day of May, 2012.

BY THE COURT:

s/Craig B. Shaffer
United States Magistrate Judge